**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

TIMOTHY MARSH,                          1:17-cv-6939-NLH-KMW

                Plaintiff,       **OPINION**

        v.

GGB, LLC,

                Defendant.

**APPEARANCES:**

TIMOTHY STEVEN SEILER
ARI R. KARPF
KARPF KARPF & CERUTTI PC
3331 STREET ROAD, SUITE 128
TWO GREENWOOD SQUARE
BENSALEM, PENNSYLVANIA 19020

        *Attorneys for Plaintiff.*

RALPH R. SMITH, III
CAPEHART & SCATCHARD
8000 MIDATLANTIC DRIVE, SUITE 300-S
P.O. BOX 5016
MOUNT LAUREL, NEW JERSEY 08053

        *Attorneys for Defendant.*

**HILLMAN**, District Judge

        The Family Medical Leave Act (hereinafter, the "FMLA"), 29
U.S.C. § 2601, allows eligible employees to take up to twelve
weeks of medical leave per year without risk of losing their
jobs.  Caruso v. Bally's Atl. City, No. 16-5021, 2019 WL
4727912, at *1 (D.N.J. Sept. 27, 2019) (Hillman, J.).

Additionally, the FMLA expressly prohibits employers from interfering with an employee's use of their FMLA rights.  See Id.

In this case, Timothy Marsh ("Plaintiff"), a former employee of GGB, LLC ("Defendant"), alleges Defendant violated the FMLA and interfered with his FMLA rights when it terminated his employment.  Plaintiff also alleges that Defendant's actions violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. ("N.J.S.A.") 10:5-1, *et seq.*

This matter comes before the Court on Defendant's motion for summary judgment (ECF No. 33).  For the reasons that follow, Defendant's motion will be granted.

## BACKGROUND

The Court takes its facts from the parties' statements of material fact submitted pursuant to Local Civil Rule 56.1(a).  The Court notes disputes where appropriate.

Defendant is in the business of manufacturing bearings.  In early 2010, Defendant hired Plaintiff through a temporary staffing agency for a non-permanent role.  In August of 2010, Defendant brought Plaintiff on as a permanent employee and tasked him with setting up and operating machinery in the

manufacturing process.  (ECF No. 34 ("Def. SOMF") at ¶¶3-4).
Plaintiff was also expected to manage certain materials and
conduct safety checks on the shop floor.

Unfortunately, Plaintiff suffers from anxiety and major
depression and experiences panic attacks and other disabling
episodes that often make it difficult for him to attend work.
See (ECF No. 37-1 ("Pl. SOMF") at ¶¶9-10).  For these
disabilities, Plaintiff requested and received leave benefits
under the FMLA, and beginning on September 26, 2011, Plaintiff
began utilizing FMLA leave, on and off, until he was terminated
in October of 2016.  See (ECF No. 37-9) (FMLA employee leave
tracking report summarizing Plaintiff's leave utilization).

Defendant maintains a robust absenteeism policy to handle
its employees' excused and unexcused absences.  For excused
absences taken pursuant to the FMLA, employees are provided with
specific instructions regarding how to use and report such
leave.  See (Pl. SOMF at ¶13).  The process contains two steps.
First, Plaintiff was expected to call a third-party FMLA
administrator's leave hotline[1] to indicate he would be absent

---

[1] Plaintiff's FMLA leave requests were handled by Defendant's
third-party FMLA administrator.  (Pl. SOMF at ¶11; see Def. SOMF
at ¶19) (the "third party administrator handled all aspects of
an employee's application for FMLA leave.  All required
paperwork for obtaining approval was handled by the third[-
]party administrator, including the making of all approval
decisions").  While Plaintiff admits this fact in part and

from work and was invoking use of his FMLA leave allotment. (Def. SOMF at ¶18).  Second, when Plaintiff was going to be absent, for any reason, he was expected to call a hotline maintained by Defendant so Defendant could manage staffing and track attendance.  (Def. SOMF at ¶15).  Plaintiff was aware of these requirements and complied with them.  (Pl. SOMF at ¶13) ("In calling out for FMLA, Mr. Marsh would both call into Defendant's third party FMLA administrator, as well as Defendant's own hotline to report that his absence, stating that he was using the day, or part of the day, under the FMLA.").

Under Defendant's absenteeism policy, one major difference between excused and unexcused absences is that employees are assessed a certain number of points associated with unexcused absences from work.[2]  (Def. SOMF at ¶¶7-8, 11, 13).  Employees

---

denies it in part, Plaintiff's denial is simply an attempt to supplement the fact asserted and does not, in any way, disprove it.  As such, the Court will accept this fact over Plaintiff's objection.

[2] FMLA leave time falls within Defendant's excused leave policy, for which no points are assessed, and Plaintiff was, in fact, not assessed points during periods of FMLA leave.  (Def. SOMF at ¶13).  Plaintiff argues, without citation to the record, that Defendant failed to excuse all of Plaintiff's absences "that were caused by his disabilities."  (ECF No. 37-2 at ¶13).  Our Local Civil Rules require opponents of summary judgment to furnish "a responsive statement of material fact[], addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion[.]"  L. Civ. R. 56.1(a).

are assessed a single point for being excessively tardy or
absent.  (Def. SOMF at ¶10).  Accrual of nine points under
Defendant's absenteeism policy results in automatic termination,
without exception or flexibility.[3]  (Def. SOMF at ¶¶27-28).  When
an employee reached seven absence points, they received a
written warning advising them they were nearing the nine-point
mark.  (Def. SOMF at ¶29).  The written warning outlined each
instance where a point was assessed.  (Def. SOMF at ¶30).  Once
an employee received nine points, however, termination was
mandatory under Defendant's policy.  (Def. SOMF at ¶28).

Separate from his FMLA leave, Plaintiff was absent from
work on a number of additional, non-FMLA excused occasions, the

---

Plaintiff has not cited to any authority in support of his
assertion.

Additionally, the Court recognizes a difference between "approved
FMLA time" and absences "caused by [Plaintiff's] disabilities[,]"
a distinction that will be discussed further, <u>infra</u>.  Finding that
Plaintiff's denial of this fact does not comply with Local Civil
Rule 56.1(a) and is not otherwise supported by the record, the
Court resolves this dispute against Plaintiff not because it is
immaterial but because the assertion is not supported by admissible
evidence.

[3] Plaintiff contests this fact.  Plaintiff admits that
Defendant's human resources manager testified consistent with
this fact but denies "that Defendant's witnesses are credible."
(ECF No. 37-2 at ¶28).  While Plaintiff attempts to manufacture
credibility issues, Plaintiff cites no evidence suggesting that
termination was not automatic after accrual of nine points.  As
such, the Court accepts this fact as unrebutted as no record
evidence contradicts it.

last of which occurred in October of 2016.  On October 5, 2016,
Plaintiff called out of work and attempted to invoke his FMLA
leave.  (Def. SOMF at ¶32).  Unfortunately, Plaintiff had
already exhausted his FMLA leave allotment, and this absence
was, therefore, unexcused under Defendant's leave policy.  (Def.
SOMF at ¶33).  Because this absence was not excused, Plaintiff
received a point for it.  See (Def. SOMF at ¶34).  That point
assessment brought Plaintiff to nine total points for unexcused
absences.  (Id.).  Defendant's human resource manager was
alerted to the point accrual and presented the matter to the
human resources team for resolution.  (Def. SOMF at ¶35).

Thereafter, a meeting was held with Plaintiff and two
representatives from Plaintiff's union.  (Def. SOMF at ¶37).  At
that meeting, Plaintiff was informed he was being terminated for
excessive absenteeism under Defendant's unexcused absenteeism
policy.  (Def. SOMF at ¶38).  During this meeting, Plaintiff
received a written notice outlining all instances of point
accrual and noting his termination.  (Def. SOMF at ¶39).
Defendant discussed the notification with Plaintiff and "went
over the occurrences that resulted in Plaintiff reaching 9
points[.]"  (Def. SOMF at ¶40).  Plaintiff told Defendant that
"at least two of the absences were due to his disabilities" and
asked whether there was "anything that could be done regarding

th[ose] attendance points"[4] including "removing them from his record."[5]  (Pl. SOMF at ¶83).  Defendant was not willing to make an exception and stood firm on its decision.  See (Pl. SOMF at ¶¶84-86).

Plaintiff's complaint contains three counts, which Plaintiff then sub-divides into various sub-counts.  The first count alleges FMLA interference and FMLA retaliation claims.  Count two alleges Defendant violated the ADA by discriminating against Plaintiff on the basis of his disability, failing to accommodate him, and retaliating against him.[6]  Count three

---

[4] Plaintiff suggested during this meeting that he thought he had additional FMLA leave time remaining.  Defendant advised Plaintiff that if he believed he had FMLA leave time remaining, he could contact the third-party FMLA administrator and, if true, Defendant would correct the situation.  (Def. SOMF at ¶43).

[5] The parties disagree about whether Plaintiff ever requested an accommodation due to his disabilities.  Defendant asserts that Plaintiff never sought any type of reasonable accommodation for his disabilities during this termination hearing or the absence-reporting phone calls leading up to it.  (Def. SOMF at ¶46).  Plaintiff argues that he did, citing to his own statement of material facts in which Plaintiff essentially says his notification that two of the nine points resulted from his disabilities and asking that they be removed from his record was a request for accommodation.  (Pl. SOMF at ¶¶79-86).  Whether such a request constitutes a request for reasonable accommodations will be discussed further, infra.

[6] Plaintiff also alleged hostile work environment claims but has stated his intention to abandon those claims.  (ECF No. 37 ("Pl. Br.") at 7, n.1).  As such, the Court will not assess these claims further.

alleges Defendant violated the NJLAD by discriminating against Plaintiff on the basis of his disability, failing to accommodate Plaintiff, and retaliating against Plaintiff.[7]

## DISCUSSION

### I.   Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

### II.   Legal Standard

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to

_____

[7] Plaintiff also presents a number of additional facts he suggests are relevant, including those relating to (1) an incident in which Plaintiff was reprimanded for taking an unscheduled break (which Plaintiff represents he took because he was having a panic attack) for which Plaintiff was reprimanded for not telling his supervisor he needed time off, and (2) a change in duties where Plaintiff was asked to pack bearings instead of helping to create them.  See gen. (Pl. SOMF at ¶¶33-76).  Plaintiff categorizes these facts as "animosity following and relating to [Plaintiff's use] of FMLA leave."  See (Pl. SOMF at ¶¶32-33).  While Plaintiff suggests these facts are relevant, he does not rely on them in his brief in any substantial manner. Instead, Plaintiff focuses this Court's attention almost exclusively on facts surrounding Plaintiff's termination.  A detailed recitation of these additional proffered facts, therefore, is unwarranted as they do not affect the outcome of Defendant's motion.

a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa.

9

Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although
the initial burden is on the summary judgment movant to show the
absence of a genuine issue of material fact, 'the burden on the
moving party may be discharged by []showing[]--that is, pointing
out to the district court—-that there is an absence of evidence
to support the nonmoving party's case' when the nonmoving party
bears the ultimate burden of proof." (citing Celotex, 477 U.S.
at 325)).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial.  Celotex, 477
U.S. at 324.  A "party opposing summary judgment 'may not rest
upon the mere allegations or denials of the . . . pleading[s].'"
Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  For
"the non-moving party[] to prevail, [that party] must 'make a
showing sufficient to establish the existence of [every] element
essential to that party's case, and on which that party will
bear the burden of proof at trial.'"  Cooper v. Sniezek, 418 F.
App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322).
Thus, to withstand a properly supported motion for summary
judgment, the nonmoving party must identify specific facts and
affirmative evidence that contradict those offered by the moving
party.  Anderson, 477 U.S. at 257.

## ANALYSIS

### I.  Plaintiff's FMLA Allegations

"An employer may be sued under the FMLA for interfering with an employee's FMLA rights, as well as for retaliating against an employee who exercises rights under the FMLA." Caruso, 2019 WL 4727912, at *5 (citing Lupyan v. Corinthian Colleges Inc., 761 F.3d 314, 318 (3d Cir. 2014)).  "[F]iring an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee."  Id. (quoting Erdman v. Nationwide Ins. Co., 582 F.3d 500, 509 (3d Cir. 2009)).

Plaintiff asserts both an FMLA retaliation and FMLA interference claim.  While the two are certainly related, and while Plaintiff addresses them jointly in his briefing, the Court will address each claim separately because they are governed by differing legal standards.

### a. Summary Judgment Is Appropriate On Plaintiff's FMLA Interference Claim

Defendant argues that Plaintiff requested and received all FMLA benefits owed to him by law and exhausted those benefits without interference.  As such, Defendant argues, summary judgment is appropriate.  Plaintiff disagrees.

29 U.S.C. § 2615(a)(1) prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of

11

or the attempt to exercise, any right" that it guarantees.  To prevail on an FMLA interference claim, an employee "must show (1) she was entitled to take FMLA leave on [the date it was sought for], and (2) [the employer] denied her right to do so." Lichtenstein v. Univ. of Pittsburg Med. Ctr, 691 F.3d 294, 312 (3d Cir. 2012) (citing Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005)); Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir. 2006).  The interference inquiry is merely about whether the employer provided its employee with the entitlements and protections guaranteed by the FMLA.  Caruso, 2019 WL 4727912, at *8 (citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 159 (1st Cir. 1998)); Callison, 430 F.3d at 120.

While Plaintiff does not clearly articulate his theory of alleged interference, Plaintiff's complaint strongly suggests his focus is on Defendant's assessment of an absenteeism point for absences occurring in October of 2016.[8]  Plaintiff argues that "it may constitute both an interference violation and/or retaliation to terminate an employee for requesting FMLA leave." (Pl. Br. at 18).  Plaintiff avers that he "was terminated in

---

[8] A review of Plaintiff's brief reveals that the term "interference" appears only seven times, all of which appear over the course of a single paragraph.  This demonstrates the lack of support Plaintiff provides for his FMLA interference claim and leaving the Court to speculate on some level as to the exact theory advanced by Plaintiff.

retaliation for requesting and utilizing leave and/or accommodations under the ADA and FMLA." (Pl. Br. at 20). Lastly, Plaintiff argues he "was terminated just one day after engaging in protected activities under both the FMLA and ADA by utilizing approved medical leave on October 10, 2018 because of a flareup related to his disabilities." (Pl Br. at 23).

Despite Plaintiff's averment that he was fired after invoking protected FMLA leave during October of 2016, the record proves that Defendant's October 2016 leave was not protected by the FMLA because Plaintiff had exhausted all of his available FMLA leave by that time. Essentially, Plaintiff sought to draw from a dry well, rendering his leave unprotected. See Coker v. McFaul, 247 F. App'x 609, 620 (6th Cir. 2007) (quoting Manns v. ArvinMeritor, Inc., 291 F. Supp. 2d 655, 660 (N.D. Ohio 2003)) ("Once an employee exceeds his . . . FMLA leave, additional leave . . . is not protected[.]"); see also Smith v. Medpointe Healthcare, Inc., 338 F. App'x 230, 233-34 (3d Cir. 2009) (affirming district court's grant of summary judgment in favor of defendant-employer on an FMLA interference claim where plaintiff was found to have taken absences beyond those permitted by FMLA, and where those non-protected absences triggered the employer's stated absenteeism policy, compelling termination). Because Plaintiff cannot establish that he was

entitled to FMLA leave for the dates in October 2016 he invoked

such leave, he cannot establish Defendant interfered with his

FMLA rights.  See Lichtenstein, 691 F.3d at 312.

Relevantly, an employer's decision not to grant extended,

unprotected leave, is not an interference with FMLA rights; said

differently, Defendant cannot be found to interfere with

Plaintiff's attempts to use time he did not have.  See Coker,

247 F. App'x at 620; Smith, 338 F. App'x at 233-34.  Because

Plaintiff has not presented evidence suggesting he was entitled

to the leave he sought, the Court will grant summary judgment on

Plaintiff's FMLA interference claim.

b. Summary Judgment Is Appropriate On Plaintiff's FMLA
   Retaliation Claim

"The FMLA prohibits employers from discriminating against

employees who have taken FMLA leave, and also prohibits

employers from using an employee's utilization of FMLA leave as

a negative factor in employment actions, such as hiring,

promotion, or disciplinary actions." Caruso, 2019 WL 4727912,

at *5 (citing 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.220(c)).

"To establish a retaliation claim under the FMLA, a plaintiff

must first establish a prima facie case of retaliation by

demonstrating that: (1) she availed herself of a protected right

under the FMLA; (2) she suffered an adverse employment action;

and (3) the adverse action was causally related to the

14

plaintiff's FMLA leave." Id. (citing Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004)).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Moore v. City of Philadelphia, 461 F.3d 331, 342 (3d Cir. 2006); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997). If the defendant is successful in articulating a legitimate, nondiscriminatory reason for the adverse action, the burden then shifts back to the plaintiff, who must show that the employer's proffered reason is only pretext and that the employer's real reason for the adverse action was to retaliate against the employee for taking FMLA leave. Id. (citing Hodgens, 144 F.3d at 161; Thurston v. Cherry Hill Triplex, 941 F. Supp. 2d 520, 532 (D.N.J. 2008)).

To demonstrate the third prong of a prima facie case, Plaintiff "must point to evidence sufficient to create an inference that a causative link exists between her FMLA leave and her termination." Lichtenstein, 691 F.3d at 307 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-81 (3d Cir. 2000)).

Plaintiff fails to state a prima facie claim for FMLA retaliation for the same reasons his interference claim fails:

15

he has not shown he was retaliated against for invoking a protected right because the FMLA leave time he sought to use had already been exhausted.[9]  See Coker, 247 F. App'x at 620; Smith, 338 F. App'x at 233–34.  On that basis alone, Plaintiff's claim must fail.  Nonetheless, even if Plaintiff could be deemed to state a prima facie claim, Defendant has articulated a legitimate, non-discriminatory basis for terminating Plaintiff, which Plaintiff has not adequately rebutted: excessive, unprotected absenteeism.

Defendant has a clear attendance policy, which Plaintiff violated by recording excessive, unexcused, non-FMLA protected absences.  The record contains ample evidence of Defendant's policy and Plaintiff's accumulation of absentee points under the otherwise neutral policy.  On this record, the Court is satisfied Defendant has sufficiently expressed a legitimate, non-discriminatory basis for terminating Plaintiff.  Indeed, the Third Circuit, like several of its sister circuits throughout the country, has found that termination due to excessive,

---

[9] For this same reason, the Court is not convinced Plaintiff has adequately satisfied the third prong of the analysis, which requires he prove a causal link between the protected FMLA activity and his termination.  See Lichtenstein, 691 F.3d at 307.  Because Plaintiff's activity – invoking leave time he did not have – is not a protected activity, there can be no causative link between his termination and a protected activity.

unexcused, non-FMLA absences is enough to warrant a finding in Defendant's favor.  Smith, 338 F. App'x at 234 ("Medpointe had just cause to terminate Smith's employment because Smith's non-FMLA leave violated its absence policy"); Johnson v. Vintage Pharm., Inc., 185 F. App'x 798, 799-800 (11th Cir. 2006) (affirming grant of judgement where employer provided full FMLA benefits and the plaintiff was excessively absent above and beyond the time provided by the FMLA); Coker, 247 F. App'x at 620 (quoting Manns, 291 F. Supp. 2d at 660) ("There is no regulatory or statutory authority to impose upon an employer the obligation to provide [family medical leave] in excess of the 12-week period under these circumstances.  'Once an employee exceeds his twelve work weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will not violate the FMLA.'").

The next step in the analysis, then, is for Plaintiff to offer proof that Defendant's proffered reason for termination is pretextual.  See Moore, 461 F.3d at 342; Krouse, 126 F.3d at 500-01. Plaintiff has not carried that burden.  There is no record evidence to suggest that Plaintiff was terminated for anything other than his accumulation of points sufficient for termination under Defendant's clearly stated and uniformly

applied policy.  Therefore, Defendant is entitled to judgment as a matter of law on this claim.

## II.   Plaintiff's ADA/NJLAD Allegations

### a. Summary Judgment Is Appropriate On Plaintiff's Disability Discrimination Claims

"Disability discrimination claims under the ADA and the NJLAD are analyzed under the same framework." Stewart v. Cty. of Salem, 274 F. Supp. 3d 254, 259 (D.N.J. 2017) (Hillman, J.) (citing Guarneri v. Buckeye Pipe Line Services Co., 205 F. Supp. 3d 606, 615 (D.N.J. 2016); Joseph v. New Jersey Transit Rail Operations Inc., 586 Fed. App'x. 890, 892 (3d Cir. 2014); Victor v. State, 4 A.3d 126, 145 (N.J. 2010)).  To state a prima facie cause of action for disability discrimination, Plaintiff must show he: (1) was disabled; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) suffered an otherwise adverse employment decision as a result of discrimination.  Id. (citing Guarneri, 205 F. Supp. 3d at 615).  Disability discrimination encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.[10]

---

[10] For the reasons to be discussed, infra, this Court finds Plaintiff's reasonable accommodations claims fail.  Because Plaintiff's reasonable accommodations claims fail, so too must Plaintiff's disability discrimination claims to the extent they

Taylor v. Phoenixville School Dist., 184 F.3d 296, 305–06 (3d Cir. 1999) (discussing ADA); Gavin v. Haworth, Inc., No. 15-180, 2016 WL 7325474, *6 (D.N.J. Dec. 16, 2016) (discussing NJLAD).

"It should not require saying that generally attendance is a requirement of a job.  Not surprisingly, courts are in agreement on this point."  Waggoner v. Olin Corp., 169 F.3d 481, 483 (7th Cir. 1999) (citing Tyndall v. National Educ. Ctrs., 31 F.3d 209 (4th Cir. 1994); Santiago v. Temple Univ., 739 F. Supp. 974, 979 (E.D. Pa. 1990), aff'd, 928 F.2d 396 (3d Cir. 1991) ("attendance is necessarily the fundamental prerequisite to job qualification"); Tumbler v. American Trading & Prod. Corp., No. 96-8566, 1997 U.S. Dist. LEXIS 6119, *4-5 (E.D. Pa. May 2, 1997) (citations omitted) ("In addition to possessing the skills necessary to perform the job in question, an employee must be willing and able to demonstrate these skills by coming to work on a regular basis. . . . Therefore, a regular and reliable level of attendance is a necessary element of most jobs"); Rogers v. International Marine Terminals Inc., 87 F.3d 755 (5th Cir. 1996); Nesser v. Trans World Airlines, Inc., 160 F.3d 442 (8th Cir. 1998)).

---

rely upon an alleged failure to provide reasonable accommodations.

In Miller v. University of Pittsburgh Medical Center, 350 Fed. Appx. 727 (3d Cir. 2009), the Third Circuit found that "[a]ttendance can constitute an essential function under the ADA[.]" Id. at 729. Certainly, "[c]ommon sense dictates that regular attendance is usually an essential in most every employment setting; if one is not present, he is usually unable to perform his job." Id. (quoting Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co., 201 F.3d 894, 899-900 (7th Cir. 2000)). In Miller, the appellant-plaintiff's job description required her to assist with surgical procedures in a hospital. Based on that role, the Third Circuit found it "evident that attendance is an essential element of this position." Id. The Third Circuit found that because the plaintiff had not provided evidence of a reasonable accommodation that would enable her to perform her essential, on-scene functions, affirmation of a district court's grant of summary judgment in favor of an employer-defendant was warranted. Id.

Like the plaintiff-appellant in Miller, Plaintiff's job duties require him to be in attendance and on a factory floor, physically handling machinery in the manufacturing process. Therefore, regular attendance – when not otherwise excused – is undoubtedly an inherent qualification of Plaintiff's job description.

Because attendance is key to Plaintiff's job duties, and because Plaintiff's history of unexcused absenteeism indicates an inability to attend work on a regular basis when not otherwise excused, the Court cannot find Plaintiff is qualified for the job he occupied.  See, e.g., Miller, 350 Fed. Appx. at 729; Santiago, 739 F. Supp. at 979.  Additionally, for the reasons to be discussed below, Plaintiff has not provided evidence that he requested a reasonable accommodation that would permit him to otherwise carry out his on-the-floor obligations. Defendant is therefore entitled to summary judgment on this claim.

   b. Summary Judgment Is Appropriate On Plaintiff's Failure
      to Accommodate Claims

"The failure to accommodate is one of two distinct categories of disability discrimination claims[.]"  Rich v. State, 294 F. Supp. 3d 266, 278 (D.N.J. 2018) (quoting Tynan v. Vicinage 13 of Superior Court, 798 A.2d 648, 655 (N.J. Supt. Ct. App. Div. 2002)).  The elements of failure to accommodate claims under the NJLAD and the ADA are so similar that the two may be addressed together.  Id. (citing Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 n.12 (3d Cir. 2006)).

To establish a prima facie case of failure to accommodate, Plaintiff must establish the following factors: (1) Plaintiff was handicapped or disabled within the meaning of the statutes;

(2) Plaintiff was qualified to perform the essential functions of the position of employment, with or without accommodation; (3) Plaintiff suffered an adverse employment action because of the handicap or disability; and (4) Defendant sought another to perform the same work after Plaintiff had been removed from the position. McQuillan v. Petco Animal Supplies Stores, Inc., No. 13-5773, 2014 WL 1669962, *6 (D.N.J. Apr. 28, 2014); Armstrong, 438 F.3d at 246; Tynan, 798 A.2d at 657.

Plaintiff fails to state a prima facie case for retaliation under the ADA and the NJLAD. Plaintiff's failure to accommodate claim fails for at least two reasons. First, Plaintiff has not shown he was qualified to perform the essential functions of his position of employment. As this Court discussed in greater detail, supra, because Plaintiff's job duties required him to operate machinery from the shop floor, and because Plaintiff cannot establish an ability to regularly attend work when not otherwise excused, he cannot establish he is qualified for the role he held. See, e.g., Santiago, 739 F. Supp. at 979 ("attendance is necessarily the fundamental prerequisite to job qualification"); Tumbler, 1997 U.S. Dist. LEXIS 6119, at *4-5 ("a regular and reliable level of attendance is a necessary element of most jobs"); Miller, 350 Fed. Appx. at 729 ("regular attendance is . . . essential").

22

Plaintiff nonetheless argues he requested a reasonable accommodation during his termination meeting – removal of absenteeism points – and that request was inappropriately rejected without due consideration.  Specifically, Plaintiff argues that he

> requested assistance for [his] disabilities . . . , "asking whether there was anything that could be done regarding these points, including removing them from my record, as the same we[re] due to conditions as opposed to general call-outs."  In response, [Defendant] failed entirely to engage in the interactive process or accommodate Mr. Marsh for even just one day past his FMLA leave entitlement, which is all that would have been required to preserve his employment[.]

(Pl. Br. at 16).

Plaintiff directs this Court to a line of cases suggesting extended periods of leave for medical treatment may be deemed a request for reasonable accommodation.  See (ECF No. 37 at 14). Those cases generally hold that "[a] leave of absence for medical treatment may constitute a reasonable accommodation under the ADA."  See Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004) ("[T]he federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned . . . that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future."); Shannon v. City of Philadelphia, No. 98-5277, 1999

U.S. Dist. LEXIS 18089, 1999 WL 1065210, at *6 (E.D. Pa. Nov. 23, 1999) ("Viewing the evidence in the light most favorable to [plaintiff], the court finds that a reasonable jury could conclude that [plaintiff's] request for an additional three months of unpaid leave for medical treatment was a reasonable accommodation.").

These cases, however, are easily distinguishable. Plaintiff did not request an accommodation so he could obtain additional medical treatment; instead, he requested - after being placed on notice of his termination for excessive, unexcused absenteeism - that Defendant retroactively excuse otherwise unexcused absences so he could keep his job. Such requests are, the Court finds, inherently different. Plaintiff does not explain how receiving such a benefit would help him accomplish his employment tasks in the "near future" and this Court finds that he cannot so prove. See Conoshenti, 364 F.3d at 151. On that basis alone, Defendant is entitled to summary judgment on this claim.

Moreover, Plaintiff has not established Defendant sought another to perform the same work after plaintiff had been removed from the position. For these reasons, Plaintiff's failure to accommodate claims fail.

24

　　　　c. Summary Judgment Is Appropriate As To Plaintiff's
　　　　　 Retaliation Claims

　　　The ADA and NJLAD make it unlawful to retaliate against or

intimidate any individual because he or she has opposed any act

or practice made unlawful by the ADA or NLJAD.  42 U.S.C. §

12203; N.J.S.A. 10:5-12(d), (e); Krouse, 126 F.3d at 502

(citations and internal quotation marks omitted) ("Unlike a

plaintiff in an ADA discrimination case, a plaintiff in an ADA

retaliation case need not establish that he is a qualified

individual with a disability.").  To prove a prima facie case of

retaliation under the ADA or the NJLAD, the plaintiff must

demonstrate by a preponderance of the evidence that (1) he

engaged in a protected activity; (2) he suffered an adverse

action; and (3) a causal connection exists between the protected

activity and the adverse action.  Krouse, 126 F.3d at 500.

　　　"If an employee establishes a prima facie case of

retaliation under the ADA, the burden shifts to the employer to

advance a legitimate, non-retaliatory reason for its adverse

employment action."  Krouse, 126 F.3d at 500 (citation omitted).

The Third Circuit explains that the employer's burden at this

stage is "relatively light: it is satisfied if the defendant

articulates any legitimate reason for the [adverse employment

action]; the  defendant need not prove that the articulated

reason actually motivated the [action]."  Id. at 500-01 (quoting

<u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 n.2 (3d Cir.
1997), <u>cert. denied</u>, 118 S. Ct. 299, 139 L. Ed. 2d 230 (1997)).
If the employer satisfies its burden, "the plaintiff must be
able to convince the factfinder both that the employer's
proffered explanation was false, and that retaliation was the
real reason for the adverse employment action."   <u>Id.</u> at 501
(citing <u>Woodson</u>, 109 F.3d at 920 n.2).   It is on the plaintiff
to prove that retaliatory animus played a role in the employer's
decision-making process and that it had an effect on the outcome
of that process.  <u>Id.</u> (citing <u>Woodson</u>, 109 F.3d at 931-35). The
burden of proof remains at all times with the plaintiff.  <u>Id.</u>
(citing <u>Woodson</u>, 109 F.3d at 920 n.2.

To obtain summary judgment, the employer must show that the
trier of fact could not conclude, as a matter of law, "(1) that
retaliatory animus played a role in the employer's decision[-
]making process and (2) that it had a determinative effect on
the outcome of that process."  <u>Krouse</u>, 126 F.3d at 501.  This
may be accomplished by establishing a plaintiff's inability to
raise a genuine issue of material fact as to either: "(1) one or
more elements of the plaintiff's prima facie case or, (2) if the
employer offers a legitimate non-retaliatory reason for the
adverse employment action, whether the employer's proffered

explanation was a pretext for retaliation." Id. (citations omitted).

As to Plaintiff's prima facie case, Plaintiff argues he engaged in a protected activity by "taking medical leaves of absence and requesting FMLA for his disabilities on numerous occasions, including, but not limited to, on October 10, 2016." (ECF No. 37 at 19). As for the adverse action requirement, Plaintiff alleges he "was terminated in retaliation for requesting and utilizing leave and/or accommodations under the ADA and FMLA." (ECF No. 37 at 20). The problem with Plaintiff's theory, as this Court previously explained, is that (1) the record proves Defendant offered Plaintiff, and Plaintiff used, all available FMLA leave guaranteed by law, and (2) Plaintiff's termination followed documented accrual of unexcused, non-FMLA protected absences. While the Court hesitates to conclude Plaintiff proved a prima facie case of retaliation, again, this Court finds the issue easily disposed of by seeing the analysis through to the end.

As this Court previously concluded, Defendant has set forth a non-pretextual basis for terminating Plaintiff: excessive, unexcused absenteeism. The record fully supports that position. Turning the inquiry back to Plaintiff, as this Court must, the Court finds Plaintiff unable to present evidence suggesting that

stated basis for termination was pretextual.  As such, summary judgment is appropriate on Plaintiff's retaliation claims.

**CONCLUSION**

For the reasons expressed above, Defendant's motion for summary judgment (ECF No. 33) will be granted in its entirety. A separate Order will be entered and this matter will be marked by the Clerk as closed.


Date: April 23, 2020                   s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.